Hector GURROLA, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–92–00030–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 25, 1993.

Discretionary Review Granted
June 6, 1993.

W.R. Voigt, Jr., Houston, for appellant.

J. Harvey Hudson, Houston, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

CANNON, Justice.

This is an appeal of a conviction for possession of cocaine. Appellant Gurrola made a pre-trial motion to suppress evidence arguing that a gun and cocaine were illegally seized from his person. After his motion was denied, Gurrola pled guilty. He now appeals the pre-trial ruling and subsequent conviction. We affirm.

Late one September afternoon, a middle-aged man, walking his dog, flagged down Deputy Ronald Butler and complained of a disturbance at an apartment complex. The man did not know the nature of the disturbance. Responding to the citizen complaint, Butler went to the parking lot of the complex. The complex was known for drug trafficking, weapons use, fights, and other disturbances. He saw three men and a woman aggressively gesturing at each other and apparently engaged in an argument. Anticipating a breach of the peace, Butler sought to find out what was going on.

As Butler and other deputies approached, the four persons walked away in separate directions. Butler told them to come back. All four were ordered to put their hands on a car. A pat-down search of Gurrola yielded a pistol. A more invasive search produced cocaine.

Jorge Rodriquez, one of the four detainees, testified that there was no altercation. The discussion among the four had been friendly and concerned a dance to be held later that evening.

In one point of error, Gurrola complains that the trial court erred in denying his motion to suppress the gun and cocaine that he claims were illegally seized from his person.

Gurrola argues that his initial detention was illegal. He asserts that it is not against the law to have a conversation, even an unfriendly one. Nor is it illegal to walk away from a police officer. The police had no reason to detain any of the four. Further, Gurrola complains that even if the stop was legal, police had no justification for the pat-down search. There was no evidence that police saw any bulges in Gurrola's clothing or anything else to suggest a weapon. Since the stop and search were illegal, the seized evidence must be suppressed. TEX.CODE CRIM.PROC. ANN. art. 38.-23(a) (Vernon Supp.1993).

In a motion to suppress hearing, the trial judge is the sole trier of fact, and he may choose to believe or disbelieve any or all of the witnesses' testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim. App.1990). We will not disturb the trial court's findings of fact absent a clear abuse of discretion. *Rivera v. State*, 808 S.W.2d 80, 96 (Tex.Crim.App.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 279, 116 L.Ed.2d 231 (1991). However, whether a detention or search was reasonable under the Fourth Amendment is a question of law subject to de novo review. *See Higbie v. State*, 780 S.W.2d 228, 230 (Tex.Crim.App. 1989), *overruled on other grounds*, 800 S.W.2d 528 (1990).

The police may briefly stop a suspicious individual to determine his identity or maintain the status quo while obtaining more information. *Mays v. State*, 726 S.W.2d 937, 944 (Tex.Crim.App.1986), *cert. denied*, 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1020 (1988). To support such an investigative stop, an officer must have specific articulable facts, which in light of his experience and general knowledge, taken together with rational inferences from those facts, would reasonably warrant the intrusion. *Ramirez v. State*, 672 S.W.2d 480, 482 (Tex.Crim.App.1984). The officer's reasonable suspicion must be based on three criteria: (1) some activity out of the ordinary is occurring or has occurred, (2) the suspect is connected with that activity, and (3) the activity is related to crime. *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim.App.1987).

As here, where no findings of fact or conclusions of law are filed or requested, it is implied that the trial court made all findings necessary to support its ruling. *State v. Knight*, 813 S.W.2d 210, 211 (Tex. App.—Houston [14th Dist.] 1991, no pet.).

There was support in the record for the trial court to have made the following implied findings of fact: (1) the police were alerted by a citizen complaint to some activity out of the ordinary, i.e., a fight or argument in a public place, (2) arriving on the scene, the police witnessed four individuals conversing, pointing at each others' faces, and exhibiting aggressive body gestures, (3) the activity plausibly threatened a breach of the peace and constituted disorderly conduct, (4) the disturbance was located in an area known for drug trafficking, weapons, fights, and other disturbances, (5) the suspects attempted to leave the scene in direct response to the arrival of the police. The trial court did not abuse its discretion in making these implied findings.

Applying the law to the facts, we hold that the stop and temporary detention of Gurrola was a reasonable investigative detention. *See id.* First, police witnessed an activity out of the ordinary—a public altercation. Second, police saw Gurrola participating in the disturbance. Third, the disturbance plausibly threatened a breach of the peace. *See* TEX.PENAL CODE ANN. § 42.01 (Vernon Supp.1993). The public altercation and the immediate dispersal of the participants when they sighted the police was not conduct as consistent with innocent activity as with illegal activity. *Cf. Schwartz v. State*, 635 S.W.2d 545, 547 (Tex.Crim.App.1982) (illegal stop when pickup in carwash parking lot and the driver and passenger leaned toward the center of the truck).

Gurrola correctly asserts that the police cannot act *solely* on the basis of an unnamed complainant of unknown reliability. *Pringle v. State*, 732 S.W.2d 363, 367 (Tex.App.—Dallas 1987, pet. ref'd). Nor does the high-crime locale, standing alone, justify an investigative stop. *Amorella v. State*, 554 S.W.2d 700, 701 n. 1 (Tex.Crim.App.1977). It is also probably true that mere flight from a police officer, without more, does not justify an investigative detention. *See Johnson v. State*, 802 S.W.2d 325, 329 (Tex.App.—Dallas 1990), *vacated on other grounds*, 825 S.W.2d 126 (1992); *but see California v. Hodari D.*, — U.S. ——, —— n. 1, 111 S.Ct. 1547, 1549 n. 1, 113 L.Ed.2d 690 (1991) (indicating in dicta that flight alone may be sufficient to justify a temporary detention). Nevertheless, the test for reasonable suspicion or probable cause requires consideration of the totality of the circumstances confront-

ing the police. *Williams v. State*, 839 S.W.2d 469, 471 (Tex.App.—Corpus Christi 1992, pet. ref'd). Therefore, the citizen complaint, high-crime environment, and attempt at flight are factors to be considered along with the police officers' other observations, prior knowledge, training, and experience.

Gurrola also argues that he was immediately *arrested*, not detained, by the police because he was not free to leave. It is true that a citizen subjected to an investigative detention is not free to leave and that such a detention amounts to a "seizure" for purposes of the Fourth Amendment. *Livingston v. State*, 739 S.W.2d 311, 327 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). That is why a temporary detention must be justified by reasonable suspicion. *Ramirez, supra; Hoag, supra*. Such reasonable suspicion was established here. Also, there were no evidence of any of the circumstances that have been held to convert an investigative detention into a full-blown arrest such as manhandling, physical restraint, handcuffing, detention at gunpoint, excessive delay, or the police telling a suspect that he was under arrest. Having Gurrola place his hands on a car was not an unreasonable method of conducting a pat-down search and did not amount to an arrest. *Cf. Burkes v. State*, 830 S.W.2d 922, 925 (Tex. Crim.App.1991) (handcuffing defendant and placing him on ground was an arrest).

Next, the pat-down search. In the course of a temporary detention, an officer may conduct a limited search for weapons when reasonably warranted for his safety or the safety of others. *Ramirez*, 672 S.W.2d at 482. The trial court did not abuse its discretion in making implied findings that (1) police had previously received numerous complaints regarding fights and weapons at the complex, (2) Officer Butler had been at the complex before and knew the area to be unsafe, (3) the participants in the altercation would likely be in an agitated state, and (4) there were four suspects. We hold that the trial court did not err in concluding that the pat-down of Gurrola was reasonably warranted for the safety of the officers and others.

Finding the pistol, the police now had probable cause to arrest Gurrola. "Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a particular person has committed or is committing an offense." *Amores v. State*, 816 S.W.2d 407, 413 (Tex.Crim.App.1991); TEX.CODE CRIM. PROC. ANN. art. 14.01 (Vernon 1977).

Once an officer is justified in making a legal arrest, he may search the suspect for objects immediately associated with the suspect's person. *Gillum v. State*, 788 S.W.2d 443, 445 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). The search incident to the arrest of Gurrola yielded the cocaine. *See Johnston v. State*, 640 S.W.2d 893, 894 (Tex.Crim.App.1982).

In sum, we find that Gurrola's initial stop was a legal investigative detention associated with a suspected public disturbance. Police seized the pistol pursuant to a legal pat-down search motivated by reasonable safety concerns. Finally, police seized the cocaine pursuant to a legal search incident to Gurrola's arrest. We overrule Gurrola's point of error.

Finding no reversible error, we affirm the judgment below.

BOWERS, Justice, dissenting.

I respectfully dissent. I agree with the majority, however, that to support an investigative stop, an officer must have specific articulable facts, which in light of his experience and general knowledge, taken together with rational inferences from those facts, would reasonably warrant the intrusion. I also agree that an officer's reasonable suspicion must be based on some activity out of the ordinary that is occurring or has occurred; the suspect must be connected with that activity; and the activity must be related to a crime. I disagree that the activity appellant was engaged in meets this criteria.

The evidence shows that police were told by an un-named citizen that there was a fight or argument in a public place. The citizen did not give any description of the person or persons who were fighting or arguing. When the police arrived, they saw four individuals talking, pointing at each others' faces. Without a description, the police did not know if these individuals were the same persons the un-named citizen had complained about. Upon seeing the police arrive, the individuals began walking away from each other.

The trial court made implied findings that the police had previously received numerous complaints regarding fights and weapons at the location where appellant was arguing, and that Officer Butler knew the area and knew it to be unsafe. The majority acknowledges that merely because an area is known to be unsafe does not justify an investigative stop.

The trial court made implied findings that the participants were in an agitated state and that there were four suspects. The four "suspects" were suspected of arguing, which is not a crime. Even if the individuals had been in an agitated state prior to the police's arrival, the individuals immediately dispersed upon the arrival of the police and were no longer in an agitated state.

I agree with the majority that the police cannot act solely on the basis of an un-named complainant of unknown reliability; that a high-crime locale, standing alone, does not justify an investigative stop; and that an individual walking away from a police officer, without more, does not justify an investigative stop. This, however, was exactly the situation and yet the majority holds that the investigative stop was justified. I, therefore dissent.